IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| LAVERN R. CRUMP, | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-12-3378 |
| MONTGOMERY COUNTY BOARD OF EDUCATION, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This Memorandum Opinion addresses:

(1) Defendants Montgomery County Board of Education (the "Board"), Jerry D. Weast, and Carmen L. Van Zutphen's Motion to Dismiss, ECF No. 15, and its supporting Memorandum ("Defs.' Dismiss Mem."), ECF No. 15-1;

(2) Plaintiff Lavern R. Crump's Motion for Leave to File Second Amended Complaint ("Pl.'s 1st Mot. to Am."), ECF No. 34, and supporting Memorandum ("Pl.'s 1st Am. Mem."), ECF No. 34-1, and Defendants' Opposition ("Defs.' 1st Am. Opp'n"), ECF No. 43; and

(3) Plaintiff's Second Motion for Leave to File Second Amended Complaint ("Pl.'s 2nd Mot. to Am."), ECF No. 47; Defendants' Opposition ("Defs.' 2nd Am. Opp'n"), ECF No. 48; and Plaintiff's Reply ("Pl.'s 2nd Am. Reply"), ECF No. 50.

Plaintiff has not filed an opposition to Defendants' Motion to Dismiss, and the time for doing so has passed. Loc. R. 105.2(a). A hearing is not necessary. *See* Loc. R. 105.6. For the

reasons stated herein, Defendant's Motion is GRANTED, and the Plaintiff's motions for leave to file a second amended complaint are DENIED.

## I. BACKGROUND

For purposes of considering Defendant's Motion, this Court accepts the facts that Plaintiff has alleged in her complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011). According to her first Amended Complaint, Plaintiff is an African-American woman who has been a primary school teacher for over thirty-five years, fifteen of which were spent teaching in the Montgomery County Public School system ("MCPS") in Montgomery County, Maryland. Am. Compl. ¶ 1, ECF No. 14.

Plaintiff began working in MCPS in 1992, and between then and 2002 she served in several positions, was well-regarded by her supervisors, and was involved in programs focusing on the needs of minority students. *Id.* ¶¶ 16–21. Between 2002 and 2005, Plaintiff became concerned about reductions in services focusing on the needs of minority students. *Id.* ¶¶ 22–24. During the 2004–2005 school year, Plaintiff met with her principal, Ralph Viggiano, to discuss these concerns as well as other concerns over how the school dealt with minority students. *Id.* ¶ 24. When Viggiano's initial response was unsatisfactory, Plaintiff requested a meeting with Viggiano and the MCPS Community Superintendent, Pat Abrunzo. *Id.* ¶ 25. Viggiano was annoyed by that meeting and began to scrutinize Plaintiff's performance more closely, but Plaintiff continued to voice her concerns. *Id.* ¶¶ 27–29. On or about October 30, 2005, Plaintiff wrote a letter to her union representative and to the MCPS Superintendent, Defendant Weast. *Id.* ¶ 30. She also reached out to Rev. Timothy Warner of the Montgomery County Government and Community Outreach Program. *Id.* ¶ 31. No action resulted. *Id.* ¶ 32.

In 2005, Plaintiff transferred to the Bel Pre Elementary School in Silver Spring, Maryland, where she was supervised by Defendant Van Zutphen. *Id.* ¶¶ 33–34. During the 2005–2006 school year, Plaintiff advocated for the implementation of programs to benefit minority students. *Id.* ¶¶ 35–36. Although Plaintiff historically had received uniformly positive performance evaluations, in Spring 2006, Van Zutphen gave Plaintiff a five-year cumulative performance evaluation rating her performance "below standard." *Id.* ¶¶ 48–50. As a result, for the 2006–2007 school year Plaintiff was placed in the "Peer Assistance and Review Program" ("PAR"), *id.* ¶ 51, a program that "provides support and mentoring for teachers who receive low ratings on their performance evaluations," *id.* ¶ 39. Around that same time, Plaintiff alleges that Van Zutphen rejected a recommendation to keep a young, Caucasian teacher in the PAR program and instead assigned her to the position of Supervisor of Student Teachers notwithstanding her lack of relevant experience or training. *Id.* ¶¶ 43–47.

Through the PAR program, Plaintiff was assigned a consulting teacher with whom she worked closely and from whom she received positive feedback noting that she did not need to continue in the PAR program. *Id.* ¶¶ 52–59. Van Zutphen disagreed with this assessment of Plaintiff and recommended that she continue in the program. *Id.* ¶¶ 60–63. Van Zutphen also reached out to Abrunzo seeking information about Plaintiff's performance, and was told of deficiencies in Plaintiff's performance and that Plaintiff had accused Principal Viggiano of being "racist toward her." *Id.* ¶ 64.

In June 2006, Plaintiff sent a letter to the PAR Panel contesting her placement in the program for the 2006–2007 school year, which she appealed in May 2007. *Id.* ¶¶ 65–66. At the end of the 2006–2007 school year, the PAR Panel "adopted Van Zutphen's allegations," gave Plaintiff a "below standard" performance rating, and recommended that Plaintiff continue in the

PAR program but be transferred to a different school because of conflicts between Plaintiff and Van Zutphen. *Id.* ¶¶ 67–69.

Plaintiff was transferred to a new school but, shortly after the beginning of the school year, she took a medical leave of absence "to address depression and anxiety issues that were due to job related stressors." *Id.* ¶¶ 69–72. Because of those medical issues, Plaintiff was able to teach only for a total of approximately ten weeks, at two different schools, during the 2007–2008 school year. *Id.* ¶¶ 73–75.

In May 2008, the PAR Panel received another unfavorable assessment of Plaintiff and recommended that MCPS not renew Plaintiff's employment contract. *Id.* ¶ 76. Typically, MCPS does not terminate an employee until after the PAR Panel conducts a formal investigation. *Id.* ¶¶ 77–78. Around June 2008, Plaintiff met with the MCPS Chief School Performance Officer "for an informal pre-termination meeting." *Id.* ¶ 79. In or around July 2008, Superintendent Weast recommended that Plaintiff be terminated and placed Plaintiff on leave without pay or benefits. *Id.* ¶ 80. On October 27, 2008, the PAR investigation concluded that Plaintiff's performance was "below standard," and Plaintiff received that report on November 18, 2008. *Id.* ¶ 81. Plaintiff followed up with several administrative appeals, and in 2011 filed an appeal in the Circuit Court for Howard County, which found against her in August 2011. *Id.* ¶¶ 82–83.

## II. PROCEDURAL HISTORY

The unusual procedural history of this case bears mention. Plaintiff, then represented by counsel, initially filed her Complaint, ECF No. 1, in this Court on November 16, 2012, alleging one count of Wrongful Discharge/Racial Discrimination in violation of 42 U.S.C. § 1981. Defendants were served in March of 2013, *see* Proof of Service, ECF No. 6; Proof of Service,

ECF No. 7; Proof of Service, ECF No. 11, and sought and were granted an extension of time to respond, Defs.' Consent Mot. for Extension of Time to Respond to Pl.'s Compl., ECF No. 9; Paperless Order, ECF No. 13. On March 22, 2013, Defendants filed a Consent Motion for Extension of Time to Respond to Plaintiff's Complaint, ECF No. 9, which was granted on March 27, Paperless Order, ECF No. 13. On April 23, 2013, Plaintiff filed an Amended Complaint adding a claim for retaliation under 42 U.S.C. § 1981, Am. Compl., and Defendants moved to dismiss on May 9, 2013, Defs.' Mot. to Dismiss.

On May 15, 2013, Plaintiff filed a Consent Motion for Extension of Time to Respond to Defendants' Motion to Dismiss, ECF No. 16, and she was granted an extension until June 6, 2013, Paperless Order, ECF No. 17. On June 4, 2013, Plaintiff filed another Consent Motion for Extension of Time to Respond to Defendants' Motion to Dismiss, ECF No. 18, this time until June 11, 2013, which I granted, noting that further extensions were unlikely, Paperless Order, ECF No. 19. On June 11, 2013, Plaintiff filed another Motion for Extension of Time to Respond to Defendants' Motion to Dismiss, ECF No. 20, noting for the first time that she intended to file a motion to amend her complaint, *id.* ¶ 3. This motion was opposed by Defendants, Defs.' Opp'n to Pl.'s (Third) Mot. for Extension of Time, ECF No. 21. I granted this motion as well, giving Plaintiff until June 21, 2013, but noted that no further extensions would be granted. Paperless Order, ECF No. 23.

On June 13, Plaintiff's attorney filed a Motion for Leave of Plaintiff's Counsel, The Employment Law Group, P.C., to Withdraw from Representation of Plaintiff Lavern Crump, ECF No. 24, and another Motion for Extension of Time for Plaintiff Lavern Crump to Respond to Defendants' Motion to Dismiss, ECF No. 25, both of which were denied. Paperless Order, ECF No. 27; Paperless Order, ECF No. 28. On June 20, 2013, Plaintiff's attorney once again

moved to withdraw, Corr. Mot. for Leave of Pl.'s Counsel The Employment Law Group, P.C., to Withdraw from Representation of Pl. Lavern Crump, ECF No. 29, and for an extension of time, Corr. Mot. for Extension of Time for Pl. Lavern Crump to Respond to Defs.' Mot. to Dismiss, ECF No. 30. Again, both were denied. Paperless Order, ECF No. 31; Paperless Order, ECF No. 32. On June 25, another Nunc Pro Tunc Renewed Motion for Extension of Time for Plaintiff to Respond to Defendants' Motion to Dismiss, ECF No. 33, was filed, followed by a Motion for Leave to File Second Amended Complaint. I granted Plaintiff's motion for an extension, requiring Plaintiff to respond no later than July 22, 2013 with no further extensions available. Paperless Order, ECF No. 35. Plaintiff's attorneys once more moved to withdraw, Second Corr. Mot. for Leave of Pl.'s Counsel The Employment Law Group, P.C., to Withdraw from Representation of Pl. Lavern Crump, ECF No. 36; Mot. for Leave of Pl.'s Counsel Subhashini Bollini to Withdraw from Representation of Pl. Lavern Crump, ECF No. 39, which motions were granted, Paperless Order, ECF No. 37; Paperless Order, ECF No. 41.

On July 17, 2013, Plaintiff sent a letter to the Court moving for reconsideration of the withdrawal of her counsel, Subhashini Bollini, on the grounds that she required additional time to find new counsel. Mot. for Reconsideration, ECF No. 44. Although I denied this motion, I granted Plaintiff until August 30, 2013, to find new counsel and respond to Defendants' Motion to Dismiss. Letter Order, ECF No. 46.

Although Plaintiff has filed a second motion for leave to amend her complaint, she has not responded to Defendants' motion to dismiss and her time to do so has passed. The withdrawal of Plaintiff's counsel has resulted in a serious disadvantage both to Plaintiff—who now must respond pro se to Defendants' nuanced legal arguments—and to this Court—which must consider the validity of Plaintiff's serious allegations without full briefing and without

knowing what basis Plaintiff's counsel had, if any, for believing the claims in Plaintiff's complaint were meritorious.[1]

### III. STANDARD OF REVIEW

#### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

---

[1] Of course, Fed. R. Civ. P. 11(b)(2) requires that Plaintiff's prior counsel must have had a good-faith basis for believing that Plaintiff's legal claims were meritorious notwithstanding the relatively clear law discussed below.

### B. Motions to File Second Amended Complaint

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course" either within twenty-one days after serving it or within twenty-one days after service of a responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f). Fed. R. Civ. P. 15(a). Thereafter, amending a pleading requires "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires," *id.*, and should deny leave to amend only if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility," *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that the court also may deny leave if the plaintiff has amended more than once already without curing the deficiencies in the complaint); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("Delay alone . . . is an insufficient reason to deny the plaintiff's motion to amend."). Otherwise, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief" and the plaintiff moves to amend, the Court should grant the motion to give the plaintiff "opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

Determining whether amendment would be futile does not involve "'an evaluation of the underlying merits of the case.'" *MTB Servs.*, 2013 WL 1819944, at *3 (quoting *Next Generation Grp. v. Sylvan Learning Ctrs., LLC.*, No. CCB–11–0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012)). Rather, "the merits of the litigation" are relevant to the Court's ruling on a motion for leave to amend only if "a proposed amendment may clearly be seen to be futile," *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), such as "if the proposed amended complaint

8

fails to state a claim under the applicable rules and accompanying standards," *Katyle v. Penn Nat'l Gaming Inc.*, 637 F.3d 462, 471 (4th Cir. 2011); *see MTB Servs.*, 2013 WL 1819944, at *3.

IV. **DISCUSSION**

A. **Defendants' Motion to Dismiss**

At the outset, Defendants correctly note that Plaintiff's claims are subject to a four-year statute of limitations. In 1990, Congress provided for a uniform, four-year statute of limitations for all actions "arising under an Act of Congress enacted after" December 1, 1990. 28 U.S.C. § 1658. Although 42 U.S.C. § 1981 originally was enacted in 1866, Plaintiff's claims for wrongful termination—whether discriminatory or retaliatory—did not exist until the enactment of the Civil Rights Act of 1991 (the "1991 Act"), which amended § 1981. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372–73 (2004). Accordingly, the Supreme Court squarely has held that those claims "arise under" the 1991 Act and therefore are subject to the federal, four-year statute of limitations. *See id.* at 383.[2]

---

[2] Although the Fourth Circuit has not yet spoken on the issue, Defendants concede that Plaintiff's claims are subject to a four-year statute of limitations regardless of whether brought under § 1981 or § 1983. Defs.' Dismiss Mem. 13. The only circuit court squarely to address the issue has held that, because a wrongful termination claim could not be asserted under § 1983 until after the passage of the 1991 Act, it fell within the four-year limitations period of § 1658. *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008); *see also Harmon v. Patrolman's Benevolent Ass'n*, 199 F. App'x 46 (2d Cir. 2006) ("[T]he applicable statute of limitations on Section 1983 claims is 3 years (or 4 years, if the claims are set forth under 28 U.S.C. § 1658(a)) . . . ."). The majority of district courts to confront the issue also have so held. *See, e.g.*, *Mveng-Whitted v. Va. State Univ.*, 927 F. Supp. 2d 275, 278 (E.D. Va. 2013); *DeNigris v. N.Y.C. Health and Hosps. Corp.*, 861 F. Supp. 2d 185, 191–91 (S.D.N.Y. 2012). Because a wrongful termination action under § 1983 did not exist until after the 1991 Act, I think it likely—though I need not decide here—that the four-year statute of limitation applies. *See Jones*, 541 U.S. at 382 (noting that a claim arises under an Act of Congress if it "was made possible by a post-1990 enactment"). Because the alternative is Maryland's shorter, three-year statute of limitations, *see, e.g.*, *Weathersbee v. Balt. City Fire Dep't*, ---- F. Supp. 2d ----, 2013 WL 4852249, at *7 (D. Md. Sept. 10, 2013), I will assume that the longer, four-year statute of limitations applies regardless of whether Plaintiff's claims are brought under § 1981 or § 1983.

Plaintiff filed her original Complaint on November 16, 2012. *See* Compl. Because Plaintiff's Amended Complaint and, if allowed, her purported Second Amended Complaint, both assert claims arising out of the same "conduct, transaction, or occurrence" as in her original Complaint—that is, her allegedly discriminatory and/or retaliatory discharge—they both relate back to the date of her original filing. Fed. R. Civ. P. 15(b)(1)(B); *see also* Am. Compl.; Pl.'s Mot. to Amend. But because many of the acts alleged by Plaintiff occurred more than four years before the original complaint was filed, Plaintiff is time-barred from seeking damages based on those actions.

Significantly, Plaintiff's entire course of conduct with Van Zutphen falls outside of the statute of limitations. The only cognizable harms caused by Van Zutphen were Van Zutphen's negative performance reviews, Am. Compl. ¶¶ 48, 60–64, Plaintiff's placement in the PAR program, *id.* ¶ 51, and the decision to keep her in that program, *id.* ¶¶ 65–67. All of these events occurred prior to 2008. Indeed, even if Plaintiff intended to claim that her transfer to a new school in 2007 was the result of discrimination at the hands of Van Zutphen, that transfer occurred outside of the four-year limitations period. Defendants correctly note that Plaintiff has alleged no contact with Van Zutphen after Plaintiff was transferred to a new school.[3] Defs.' Dismiss Mem. 15; *see also* Am. Compl. It is possible—indeed, likely—that Van Zutphen's alleged discriminatory or retaliatory conduct would be relevant for determining whether Plaintiff's eventual termination was improper. But because all of Van Zutphen's conduct

---

[3] Plaintiff has alleged that Plaintiff's "informal pre-termination meeting" was held "with Van Zutphen's supervisor, Stephen Bedford, Chief School Performance Officer." Am. Compl. ¶ 79. But this does not allege any actual contact with Van Zutphen, that Van Zutphen was involved in that meeting, or indeed, any relationship at all between the meeting and Bedford's role as Van Zutphen's supervisor.

occurred outside of the limitations period, Plaintiff's claims against Van Zutphen must be dismissed.

The timeliness of claims arising out of Plaintiff's eventual termination is a much closer question, and that question cannot be resolved at this early stage. Plaintiff has alleged that she was notified of the PAR Panel's report on November 18, 2008. Am. Compl. ¶ 81. Prior to that date, the PAR Panel recommended that MCPS not renew Plaintiff's contract in May 2008. *Id.* ¶ 76. Plaintiff had "an informal pre-termination meeting" with the MCPS Chief School Performance Officer, Jerry Bedford, around June 2008. *Id.* ¶ 79. Plaintiff then was "placed . . . on leave without pay or benefit" in or about July 2008. *Id.* ¶ 80. But Plaintiff also has alleged that "MCPS usually waits until the PAR program concludes its investigation to terminate an employee in the program." *Id.* ¶ 78. I find that Plaintiff has pleaded sufficiently, if somewhat inartfully, that, although she was placed on leave in July 2008, MCPS did not finalize the decision to terminate her until after the PAR panel concluded its investigation. *See id.* 78–81; *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").[4]

Defendants argue that the statute of limitations began to run no later than July 2008, when Plaintiff was placed on leave without pay, *see* Defs.' Dismiss Mem. 15, because the limitations period commences at the "time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful," *id.* at 13 (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). Thus, according to Defendants, "the notification of *possible termination* is the date on which the discrimination takes place, not the date the employment officially terminates." *Id.* at 14 (citing *Ricks*, 449 U.S. at 261; *Taylor v. Fed. Express Corp.*, No.

---

[4] Plaintiff's allegations of a later, 2011 appeal in the Circuit Court for Howard County are inapposite here, as "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Ricks*, 449 U.S. at 261 (citing *Elec. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976)).

RDB-03-195, 2004 U.S. Dist. LEXIS 30356, at *20–24 (D. Md. July 28, 2004)). But this is not the holding in *Ricks* or its progeny.

Rather, *Ricks* said that the limitations period commenced when the termination decision was actually made and communicated to the plaintiff—in that instance, with the denial of tenure, *Ricks*, 449 U.S. at 253—*even if* the plaintiff was allowed to continue in temporary employment following that decision, *see id.* at 258. In *Ricks*, there was no question that the denial of tenure meant that the plaintiff would be dismissed after the end of his "1-year 'terminal' contract," so that Plaintiff could not rely on his final year of employment to delay the running of the statute of limitations. *Id.* at 258. Similarly, in *Taylor*, the limitations period began to run when, after being informed that he would be terminated within ninety days if he did not return to his prior job, the plaintiff refused to return and the refusal was memorialized by his employer. *Taylor*, 2004 U.S. Dist. LEXIS 30356, at *24–25. Even in *Orci v. Insituform East, Inc.*, in which the plaintiff was placed on leave prior to termination, the Court found that the limitations period commenced when the plaintiff "knew . . . that he was going to be terminated," even though the decision had not been made wholly official at that time. 901 F. Supp. 978, 985 (D. Md. 1995). Here, Plaintiff appears to have alleged that MCPS's termination decision was not final— suspension notwithstanding—until after the PAR Panel issued its report. Am. Compl. ¶¶ 78–81. Discovery may show otherwise, but accepting the facts alleged by Plaintiff, *Aziz*, 658 F.3d at 390, I find that the limitations period may have commenced as late as November 18, 2008, when Plaintiff received notice of the PAR Panel's report. Accordingly, Plaintiff filed her complaint two days before the statute of limitations elapsed, and her claim is not time-barred.

But even if timely, a wrongful termination claim against the Board will not lie under 42 U.S.C. § 1981. First, Defendants correctly observe that "the express cause of action for damages

created by § 1983 constitutes the exclusive federal remedy for violation of rights guaranteed in § 1981 by state governmental units." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). But even were I to grant Plaintiff's motion to amend, which would expressly rephrase Plaintiff's claims as arising under § 1983, *see* Pl.'s 1st Mot. to Am. Ex., ECF 34-2, those claims still cannot be asserted against the Board. The Board—like all boards of education in Maryland—is a state agency. *Hanifee v. Bd. of Educ.*, No. RDB-09-2381, 2010 WL 723772 (D. Md. Feb. 24, 2010). Section 1983 only permits suits against "person[s]," *see* 42 U.S.C. § 1983, and it is well-settled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *But see id.* at 70 (noting that municipalities may be liable under § 1983 even though states cannot be (distinguishing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Accordingly, the claim against the Board must be dismissed.

Similar logic applies to Plaintiff's claims against Weast. The Fourth Circuit has explained that "[o]fficial capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent, and damages may be awarded against a defendant in his official capacity only if they would be recoverable against the government entity itself." *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982) (citations omitted). "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71. Weast's actions are limited to recommending that Plaintiff be terminated and placing Plaintiff on unpaid leave. *See* Am. Compl. ¶¶ 80, 89, 93. Plaintiff does not appear to have alleged that Weast was acting in his individual capacity, nor does it appear that Plaintiff could have so alleged, consistent with Fed. R. Civ. P. 11. *Cf. Showell v. Bd. of Educ.*, No. RDB-

10-3477, 2011 WL 5877220, at *4–5, 10 (D. Md. Nov. 22, 2011) (finding school superintendent was acting in official capacity when alleged to have sent "intimidation letter" to plaintiff following plaintiff's suspension). Accordingly, Weast also must be dismissed, and Defendants' Motion to Dismiss must be GRANTED.

### B. Plaintiff's Motions to Amend

Plaintiff also has moved—twice—to amend her complaint further. *See* Pl.'s 1st Mot. to Amend; Pl.'s 2nd Mot. to Am. Plaintiff's initial motion to amend, filed by her former counsel, provides only a bare-bones, but correct, argument that Fed. R. Civ. P. 15(a) provides that leave to amend should "'be freely given when justice so requires,'" Pl.'s 1st Mot. to Am. 1 (quoting Fed. R. Civ. P. 15(a)(2)), and that amendment should be denied only where it will result in prejudice, where the moving party has acted in bad faith, or where amendment would be futile. *Id.* at 2 (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Defendants, however, argue that the proffered amendment would be futile, and should be denied on that basis. *See* Defs.' 1st Amend Opp'n ¶ 8.

Plaintiff's purported amendment seems to make five substantive changes to Plaintiff's allegations. First, Plaintiff has added some factual allegations regarding instances of purported discrimination and bases for retaliation that occurred outside of the limitations period. *See, e.g.*, Second Am. Compl. ¶¶ 7, 46–51, 64–68, 78–80, 83–87, Pl.'s 1st Mot. to Am. Ex., ECF No. 34-2. Second, Plaintiff alleges that she learned of certain, specific retaliatory actions no earlier than 2009, in an apparent attempt to assert that the limitations period did not commence until 2009. *See id.* ¶¶ 106–07. Third, Plaintiff has re-characterized her § 1981 claims as arising under both § 1981 and § 1983. *Id.* 20–26. Fourth, Plaintiff has added several members of the Board (the "Board Defendants") as defendants. *Id.* ¶¶ 18–24. And fifth, Plaintiff has split her wrongful

14

termination claim into two separate claims: one against Weast and the Board Defendants in their official capacities, *id.* at 20, and one against Weast and Van Zutphen in their individual capacities, *id.* at 23, and has recast her retaliation claim as brought against Weast and Van Zutphen in their individual capacities, *id.* at 26.

Nothing added in Plaintiff's purported Second Amended Complaint provides a basis for subjecting the Board to liability under § 1983. *See supra*. Plaintiff has not alleged any facts to show that Weast was acting in anything other than his official capacity, and therefore cannot assert any claims against him irrespective of what she labels them. *See supra*; *cf. Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of [a] motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). Thus Plaintiff clearly could not bring a claim against Weast or the Board. Nor has Plaintiff added factual allegations of any actions taken by Van Zutphen or contact between Plaintiff and Van Zutphen within the limitations period, even assuming that Van Zutphen could be liable under § 1983 (a dubious proposition given the likelihood that she was acting in her official capacity). Thus Plaintiff's purported amendment would be futile with respect to all of the pre-existing defendants.

The purported Board Defendants also are not proper parties. "School board members are entitled to absolute immunity from § 1983 liability for 'all actions taken in the sphere of legitimate legislative activity.'" *Hanifee*, 2010 WL 723772, at *7 (quoting *Grimes v. Miller*, 448 F. Supp. 2d 664, 667 (D. Md. 2006)). The Board Defendants only could have terminated Plaintiff while acting in their official capacities. Thus Plaintiff's attempt to add claims against the Board Defendants also is futile. Accordingly, Plaintiff's Motion to Amend should be DENIED.

Finally, Plaintiff's second motion to amend her complaint primarily presents additional factual allegations in support of her right to relief, but is unclear as to whether the motion relates to the "Second Amended Complaint" that Plaintiff originally sought leave to file or improperly seeks leave to file an entirely different complaint that Plaintiff has not attached. *See* Pl.'s 2nd Mot. to Am., ECF No. 47; Pl.'s 2nd Mot. to Am. Reply, ECF No. 50. In any event, Plaintiff has not shown why any claims she may be bringing can be maintained against any defendant in this action in light of the above. Therefore, Plaintiff's second motion to amend also is DENIED.

## V. CONCLUSION

For the aforementioned reasons:

(1) Defendants' Motion to Dismiss, ECF No. 15, is GRANTED;

(2) Plaintiff's Motion for Leave to File Second Amended Complaint, ECF No. 34, is DENIED;

(3) Plaintiff's Second Motion for Leave to File Second Amended Complaint, ECF No. 47, is DENIED; and

(4) The Clerk SHALL MAIL a copy of this Memorandum Opinion and the accompanying Order to Plaintiff.

A separate order will issue simultaneously herewith.

Dated: <u>October 24, 2013</u>                 _____/S/_____
                                                            Paul W. Grimm
                                                            United States District Judge

dsy